The first case on our calendar is ICD Capital v. Codesmart Holdings. Good morning. Good morning, counsel. Good morning, Your Honor. Mr. Pastore, you may proceed. Thank you, Your Honor. And again, good morning. My name is Joseph Pastore. I represent the plaintiff appellant's position in this case is that its proposed second amended complaint is not futile and should be allowed to be filed. This case involves a large pump and dump securities fraud with the CEO and co-founder, Mr. Shapiro, being convicted of such securities fraud. Why wasn't Ms. Franey a part of the indictment? Do you have any insight? I don't. I know she was a person of interest and this case was stayed for several years pending the investigation. But why the FBI ultimately determined not to charge her, I'm not certain. I don't think that implicates the civil claims against her as it's different standards and a different level of review. But I don't have information on that. What I can tell you, however, is that Ms. Franey was the co-founder, board member, chief operating officer, and ran this business out of her home. And the supposition we have in this case is that we've alleged sufficient facts to demonstrate that she maintains liability for participation, assistance, facilitation of the scheme. What are the three best facts you've got that suggest that she knew of the scheme and participated? Very, very fair question. I will start with the Binghamton press release where they announced that they were an exclusive relationship with Binghamton and they were not. But what does she have to do with that? How are her fingerprints on that press release? She actually said she was appalled that the press release went out, didn't she? No, that's a different press release. I'll get to that one next. That's random. Binghamton is where they announced that they were an exclusive provider. I would argue with he was an author of that press release and that she, under the group pleading doctrine, two officers, this is not like Citibank where there's a big company in that case and there's no group pleading doctrine. The group pleading doctrine, she's responsible for that press release. She's the chief operating officer. Then I moved to the Ramapo press release. The Ramapo press release, she's specifically contacted by the party at Ramapo College. After the fact, right? After it went out, correct. And she said, she says, I was not aware of this, right? She says she wasn't aware the release was sent out. Yeah. Right. And she did nothing. Doesn't that show a lack of intent on fraud? Well, just because she didn't know the release went out, I don't think is determinative of a lack of intent on fraud. I think the totality of the pleadings demonstrate multiple instances where public pronunciations are made or private pronunciations in the PPM to my clients, and she does nothing to correct them. In a case where the company has no customers, no business, no actual ongoing operations, she's the chief operating officer. She's faced with all these pronouncements, Binghamton, Ramapo, the PPM, the article in Forbes, other SEC files. And she never once says, oh, by the way, none of this is true. And in fact, none of it was true. The only allegation that you have about her knowledge is that A, she holds a position of importance, or it sounds important, and B, somebody from Ramapo called her up and reamed her out. But that would put her on notice going forward after the Ramapo press release, but not before. So what do you have after the Ramapo press release that she did to perpetuate this fraud? I would argue, looking at Justice Ginsburg's decision in Tell Labs, that really this question before you is whether or not it's more likely than not, given the facts alleged, that she was aware of the fraud. And that Tell Labs is probably a heightened burden than what we would have public pronouncements. A company that she's a founder, chief operating officer and board member, wherein she takes no steps to correct. And my clients are innocent. My clients invested $2 million and lost the totality of their investment. And she did nothing to correct multiple, multiple public pronouncements about these issues. You're saying she had an affirmative duty to correct? Yeah, I believe as a board member, as an operating officer under the Care Mount rule, under breach fiduciary duty, she had a purposeful and direct fiduciary obligation to correct misstatements. And even with respect to fraud, conscious disregard has been held by this court to be a basis for finding a fraud. And remember, we're at the pleading stage here. We're not at the proof stage. This isn't summary judgment. We pled a complaint with 215 paragraphs. True, nine of which were upon information and belief. All the rest were not, which spell out the scheme and spell out the information that she had and spell out that she did nothing to correct it. But why do you say it spells out the information that she had? That's precisely what it doesn't do. It doesn't. It says that she must have known, but it doesn't say that she did know. No, let me just finish. In a complaint of this sort, there are facts alleged that would support an inference of knowledge. But it seems to me you're just relying on her position and her title. But that's generally not considered to be enough. Isn't that right? Well, I think we're relying upon the group pleading doctrine as well, particularly because there's only two officers of this company. And in the group pleading doctrine, under that pronouncements were made, there's an inference that the senior officers are aware and the senior officers support these statements. I think that case was well respected. What you do is then that if there's two officers, both officers are liable for all statements made on behalf of the company. If there's two officers and multiple public pronouncements are made at the pleading stage and you allege that those public statements were false, I think that satisfies the group pleading doctrine for a pleading perspective. Even though she particularly was not indicted together with Mr. Shapiro. She was not indicted. Shouldn't we draw the opposite inference that because one was indicted and the other wasn't, the lack of specificity in your pleadings would suggest the opposite of what you're suggesting? Well, I think ultimately that might be resolved in the case. But at the pleading stage, I think under telelabs, we've met the burden of it's equally likely that she's responsible as she's not. And I think that's even a heightened standard given that when the facts are peculiarly in someone's, the opposing party's knowledge under 9B, the pleading standard is lowered. And in 9B, the pleading standard in this case should be lowered because the facts are all in the possession of Ms. Franny, not us. We were lucky enough to get the FBI affidavit years later, which allowed us to further bolster the proposed second amended complaint. Could I ask you briefly about negligent misrepresentation? I'm trying to understand what the nature of the special relationship is between Ms. Franny and ICB. That's a very fair question. And while I believe firmly in our complaint, I'm not going to die on that hill. I think that's a tough question for us. The special relationship we allege is that because of her 17 years of industry experience and knowledge, she has a duty to communicate honestly and truthfully with our clients with respect to issues in that industry. And that's not specific to ICB, and it sounds a little bit like you're backing off that. All I'm saying is that's not our best claim, yes. Counsel, your time has expired. You have reserved two minutes for rebuttal. Let's hear from the appellee. Good morning, Your Honor. Samir Rastogi, Sequenzio Ross-Ference on behalf of Sharon Franny and CodeSmart. I think Your Honors have nailed what the district court did, which is that there's an utter lack of specificity in the complaint as it relates to Ms. Franny. This is essentially a fraud case. There are four causes of action, two direct claims against Ms. Franny, two derivative claims against Ms. Franny, and CodeSmart has the nominal defendant. In each of those causes of action, they rely upon the fraudulent statements that are alleged in the complaint. I should say the lack of fraudulent statements that are alleged in the complaint. There are three sources, the PPM, the press releases, and the Mr. Shapiro's statements. Before I get to that, Your Honor mentioned the fact that Ms. Franny wasn't indicted. There was also, and my colleague had mentioned, well, that was only in the criminal context. There are allegations within the complaint that the SEC did file a complaint and investigated. In fact, Ms. Franny was not charged on a civil level by the SEC either. But counsel, on a common sense level, there were only these two officers. How could she have not known what was going on? Is that willful blindness? Your Honor, I don't think so. I think what the complaint fails to do is actually articulate that. While the pleading standard is a heightened pleading standard under Rule 9b, and it may be relaxed, it's not eliminated. So they have certain obligations under which to allege the basis by which they have these, they're trying to link Ms. Franny to these allegations. The PPM, for example, it lists a number of what they consider to be false and each of those statements, they say upon information and belief, this is a fraudulent statement. And then immediately after that, they say that Ms. Franny knew or should have known. The status of her just being there is not a legal standard. That's what they're essentially saying, right? They're saying because Ms. Franny was there. Let me interrupt you. I mean, what Mr. Pastore said multiple times was the group pleading standard sort of carries the ball for me. And so that's a group pleading standard is my experience really just in under securities law. These are not securities law claims. These are common law claims. But what is your response to the group pleading standard that he relies on? I think your Honor is absolutely right. I think that in a common law fraud situation, the heightened pleading standard applies to each specifically there's the Laurel. In that case, there were three Wachovia entities that were intimately involved in structuring and offering securities. The allegations of that complaint state that each entity had a particular role and thereafter, they grouped them as defendants. So the court said, well, it would be silly for them to have each of their tasks, group them together, and then separate them out. So we didn't need so much precision. Again, that was a securities fraud case, as was, I believe, the Luce v. Edelstein case and In Re City Group securities litigation, all securities cases. I wanted to address the press releases. I think that those are the only difference between the first amended complaint and the second amended complaint was related to the Ramapo press release in which Ms. Franey specifically said, hey, I wasn't aware that this press release was going out. I wasn't aware that this press release was going out and no further press releases will be issued without your consent. I think your Honors have properly characterized that as to show that she didn't have knowledge. She wasn't aware. There's no allegations that she drafted those or drafted the press releases. Well, the complaint is very particular. It says code smart. It's written in the passive voice. And isn't she code smart? Well, Mr. Shapiro is code smart and she's a co-founder of code smart, but that doesn't mean that she was involved in the drafting of that. That's something that they have the burden to. It's I believe Mr. Pastore had said that they had obtained additional information from the indictment and that was able to supplement their pleadings. Well, in the indictment, there's no allegation that said Ms. Franey participated in and or drafted the press releases, the PPM, the SEC files, any of those things. Again, by virtue of her just being there doesn't create that liability. And because they're unable to allege these factual allegations, that's fatal to their negligent misrepresentation claim because you can't show a false statement. As my colleague has indicated, their special relationship element of that is hard. It is almost impossible for them to meet and have backed off on. In the breach of fiduciary duty, you can't, excuse me, in the aiding and abetting fraud, there's no substantial assistance or knowledge of the fraud. And therefore, those causes of action are doomed. In the derivative causes of action, there's no breach, there's no causation without that knowledge. In the aiding and abetting, if there's no knowledge and there's no substantial assistance like there was in the aiding and abetting of the fraud, there can't be those causes of action. Independent of those, the derivative causes of action are fatal because they show plaintiff alleges damages to plaintiff. The derivative causes of action require damages to the company. Simply saying because the company is now defunct that that's been damaged, that's simply not enough. You have to relate those same allegations, the PPM, the press releases, the investment by ICD and the other subscribers, the statements to the damage. Certainly, an investment into CodeSmart couldn't have damaged the company. And as a result, the derivative claim should also fail for an independent reason beyond the factual allegations. We believe based upon the foregoing that the district court was correct in denying the appellant's motion for leave to amend. If the judges have any additional questions, I'm happy to answer. Otherwise, I would yield the rest of my time. Thank you, counsel. Mr. Pastore, you have two minutes for rebuttal. Thank you, your honor. Mr. Pastore, can I ask you to just quickly address the issue of group pleading in a common law fraud context as opposed to a securities law context? I'll do it very quickly. I looked at all the cases when you made that point just now. I agree that they're securities cases. I don't see why that rule wouldn't be applicable to a common law fraud claim when you're talking about corporate actions involving issuance of I can't tell you I have a case that says that. But I don't see why there would necessarily be a distinction, particularly in a situation where all inferences are supposed to be drawn in our favor with respect to the pleading. But I appreciate the point and understand it. I would just like to go to the derivative claims briefly because we spent a lot of time on the fraud. But the derivative claims are aiding and abetting breach of fiduciary duty and breach of those claims also have a lower burden under 9b. Florida law makes clear that the pleading standard for fiduciary duty claims is less. And with respect to the harm issue, I've heard that argument multiple times in my career. I don't think it can stand. I don't think you can accuse someone of actions that are malevolent and malicious that destroy the company and say there's no harm as a result of those actions. Well, I mean, but it's not clear that it destroyed the company. The company, you know, may have had nothing. And so, well, it's a dump scheme designed to defraud investors by inflating the share price. How is the company harmed? Your Honor, because it's implicit in your corporate duties that you shouldn't be out pumping and dumping securities. You should be building the business of the company. And we allege that they weren't building the business of the company, but they were out misleading investors with respect to the business. What makes you think there was a company to build, that there was anything here? You see, I never accept the proposition that the company is valueless. You're free to damage it all you want. I think that's a faulty position. Well, whether you accept the proposition or not, what have you alleged in the complaint that would support a conclusion that the company was damaged? I see I'm out of time. If I can answer the question. Thank you. We allege the company had intellectual property. The company had built momentum with respect to the business and that it could have built the business. But instead of doing that, it was out pumping and dumping securities and sending out press releases at the rate of one every two days. And again, I just believe the proposition, and I'll be quiet, the proposition that you can damage companies and breach your fiduciary duties if the company has no value is not something, particularly at the pleading stage, that this court should endorse. Thank you for your time. I appreciate it very much. Thank you. Reserved decision. Thank you both.